UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIA LEDESMA, | ) | 1:05cv0744 DLB |
| | ) | |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Maria Ledesma ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On April 27, 2006, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed her applications for supplemental security income and disability insurance benefits on October 9 and November 27, 2001, alleging disability since June 25, 2001, due to pain in her chest and upper and lower back. AR 76-79, 82-91, 552-556. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 58-61, 63-67, 68. On February 9, 2004, ALJ James P. Berry held a hearing. AR 37-55. On May 12, 2004, ALJ Berry found that Plaintiff was not disabled. AR 13-23. On April 28, 2005, the Appeals Council denied Plaintiff's request for review. AR 7-11.

<u>Hearing Testimony</u>

ALJ Berry held a hearing on February 9, 2004, in Bakersfield, California. Plaintiff appeared with her attorney, Sylvia Lopez. Vocational expert ("VE") Linda Ferra also appeared and testified. A Spanish interpreter assisted during the hearing. AR 37.

Plaintiff testified that she was 37 years old. She lives at home with her husband and their three children, and is supported by food stamps and her husband's unemployment. AR 41. She completed the sixth grade in Mexico. AR 42. She can read and speak a little English. AR 42.

Plaintiff last worked in June 2001 doing field work. AR 42. She injured herself on the job and received rehabilitation training in accounting and computers in 1999. AR 42-43. She did not get a job in this field because the training did not teach her enough and no one wanted to hire her because of the pain in her back. AR 43. She returned to work but could not work after June 2001 because of her back pain. AR 43.

Plaintiff testified that she could not work because she was always in pain and could not do anything. The pain in her lower back and middle back "pinches," and standing, walking or sitting for a long time makes it worse. The pain radiates to both legs, the right one is worse than the left. The pain in her legs is very strong, runs all the way down to her heel, and comes and goes. AR 44-45. Pain pills help her by taking her pain from an "10" an "8." AR 45-46. Her medications make her sleepy and she sometimes sleeps for two to three hours. AR 46. The pain

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

keeps her from sleeping well at night. AR 46. She bathes and dresses herself slowly. AR 47. She spends her mornings walking and sitting. AR 47.

She thought she could sit for 10 to 15 minutes before needing to change positions. She thought she could stand for 15 to 20 minutes without holding onto anything or leaning up against anything. AR 45.

Plaintiff testified that she received trigger point injections in her back that helped a little, but she continues to be in constant pain. AR 47. She takes Zoloft for depression and it helps a little bit. She still feels very depressed, though, because she is always in pain. AR 48. Her family cooks and cleans because she is unable to. She does not drive because of the pain in her back and legs. AR 48. She can only lift a half-gallon of milk, and that causes her a lot of pain. AR 49. She thought she could carry three to four pounds. AR 50. When questioned by the ALJ, she indicated that she could stand for one hour to one and one half hours in an eight hour period, could walk one to two blocks, and could sit for one to two hours in an eight hour period. AR 50-51.

For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and relevant work experience. This person could lift and carry 20 pounds occasionally, 10 pounds frequently, stand, walk and sit for six to eight hours, and occasionally climb, balance, stoop, kneel, crouch and crawl. AR 52. This person could not perform Plaintiff's past relevant work, but could perform the jobs of agricultural sorter (8,400 in California, 20,700 nationally), assembler (77,000 in California, 754,900 nationally) and flagger (4,000 in California, 58,800 nationally). AR 53.

For the second hypothetical, the ALJ asked the VE to assume a person who could lift one half gallon, or approximately four pounds, and carry three to four pounds. This person could stand for one to one and one half hours total, walk one to two blocks, and sit for one to two hours. AR 53-54. This person could not perform Plaintiff's past relevant work or any other jobs in the national economy. AR 54.

Plaintiff's attorney asked the VE to consider the person in hypothetical number one, and asked how the positions cited would be affected if this person, as a result of medication,

1  experienced drowsiness during the day.  AR 54.  The VE testified that if the drowsiness affected
2  attention or work pace, the person would not be able to perform these positions.  AR 54.
3           Medical Record
4           An MRI of Plaintiff's thoracic spine in December 1997, was normal.  AR 123.
5           An MRI of Plaintiff's lumbar spine in October 1998 showed mild bulging at L5-S1.  A
6  CT scan of her sternovascular joints and sternum was essentially normal.  AR 125-126.
7           Plaintiff began seeing Joel Mack, M.D., in June 2000, for complaints of chest pain after a
8  table struck her in the chest at work in June 1997, and back pain after lifting a bucket at work in
9  September 1997.  She walked with a cane and bent over, and stated that she did not do anything
10 at home other than rest.  Upon examination, Plaintiff had tenderness all along the spinous
11 process.  He diagnosed chronic deconditioning and recommended physical therapy.  Her
12 prognosis was guarded, and Dr. Mack opined that he did not think that there was "any more
13 secondary gain as the case has been settled."  He indicated that "this will be a very difficult
14 problem."  AR 213.
15          Plaintiff attended physical therapy from June to August 2000.  On discharge, the therapist
16 noted that Plaintiff's mobility had improved and he anticipated continued improvement.  She was
17 diagnosed as deconditioned with neck and back pain.  AR 128-143.
18          In July 2000, Plaintiff returned to Dr. Mack and was "definitely improved."  AR 212.
19          On August 24, 2000, Dr. Mack indicated that Plaintiff was significantly improved after
20 the trigger point injection.  He instructed her to continue to walk and be active.  AR 211.
21          On October 23, 2000, Dr. Mack indicated that he could find nothing other than thoracic
22 sprain.  He told Plaintiff that she needs to do her exercises and walk regularly.  He released her to
23 go back to work and gave her a prescription for Darvocet for the pain.  AR 208.
24          A November 27, 2000, chest x-ray was normal.  AR 161.
25          Plaintiff saw Dr. Mack on December 11, 2000, and continued to complain of chest pain in
26 the area where an object struck her at work.  She described the pain as intolerable.  He
27 administered a total of eight Xylocaine and Kenalog injections into her chest.  AR 205.
28

On December 18, 2000, Plaintiff returned to Dr. Mack and told him that she had some improvement after the chest injection but that her back now felt worse. Dr Mack stated, "I can find absolutely nothing." He urged her to increase her activity. AR 204.

On January 29, 2001, Dr. Mack examined Plaintiff and declared her permanent, stationary, and ratable with pain as none to minimal and no disability. She had returned to work pruning vines and was not taking any medication. Dr. Mack indicated that Plaintiff should not need anything more than over the counter medications and that he would not see her again unless her problem recurred. AR 203.

In February 2001, Plaintiff told Dr. Mack that her pain returned in her shoulder, low back and right leg. AR 202. He states, "I really cannot understand why the pain suddenly came back." Over the months, she received numerous trigger point injections and was taken off work. AR 191-202.

Plaintiff underwent an MRI of her lumbar spine on July 11, 2001. The MRI revealed mild degenerative disc disease at L4-L5 and L5-S1. AR 151-152.

On November 27, 2001, Plaintiff saw Gregorio Pineda, M.D., for a consultive neurologic examination after she complained of numbness on the left side of her tongue. He suspected a brain stem disease or disorder, and ordered an MRI of her brain. AR 157-158.

On January 23, 2002, Plaintiff underwent a CT scan of her chest, which revealed a small area of pulmonary infiltrate in the right middle lobe that did not have the appearance of a typical mass. AR 160.

Plaintiff saw Jonathan M. Gurdin, M.D., on March 13, 2002, for an orthopedic evaluation. Plaintiff complained of pain throughout her entire spine with pain extending into both legs. She reported two industrial accidents in 1997, and explained that her condition worsened in June 2001. On examination, Plaintiff was well-developed, obese and poorly conditioned. She seemed to be in some discomfort, but there was considerably exaggerated pain behavior. There was slight tenderness in the midline from C5 to C7, hypersensitivity to touch of the spinous process from T1 to T8 and slight tenderness in the midline from L3 to the sacrum. She walked slowly, but did not limp, and complained of pain during straight leg raising. She

5

could make a fist with both hands and manual dexterity was normal. Grip strength and arm strength were normal and rated at 5/5. Muscle strength was normal in both legs and rated at 5/5. AR 162-163.

Dr. Gurdin diagnosed cervical and lumbar myofascitis with mild degenerative disc disease, thoracic myofascitis, prior contusion of the sternum, apparent psychiatric disorder with exaggerated pain behavior, and obesity with generalized deconditioning. He noted that Plaintiff appeared to have some genuine pain, especially in the upper thoracic region, but her pain complaints were amplified with the apparent psychiatric disorder. He noted that there appears to be a substantial discrepancy between what she is capable of doing and what she is willing to attempt. He opined that Plaintiff could be on her feet for two hours at a time and for six out of eight hours with appropriate breaks. She could sit for the same length of time. Repetitive or strenuous arm motion would probably aggravate her upper back complaints, but her hand and arm function appeared to be intact for lighter activity. She was capable of lifting and carrying at least 20 pounds occasionally and 10 pounds frequently. Dr. Gurdin stated that Plaintiff appeared to be in need of ongoing emotional support. AR 164.

Plaintiff was treated for chest pain in March 2002 by Robert McLaughlin, M.D., a pulmonologist. He indicated that Plaintiff had chest pain secondary to herpetic neuralgia and prescribed Valtrex and Vioxx. AR 166.

On March 29, 2002, Plaintiff's treating physician Fernando Bravo, M.D., stated that Plaintiff did not need an MRI of her lower back because she indicated that the Demerol and Phenergan "did wonders" for her back pain. AR 314.

On April 5, 2002, Dr. Mack indicated that Plaintiff could not perform farm labor work for one year. AR 188.

An April 22, 2002, MRI of Plaintiff's lumbar spine showed a 5 mm protrusion of the left posterior disc margin impinging the left ventral thecal sac at L4-L5. AR 218.

Plaintiff saw Shohreh Ghaemian, M.D., on May 4, 2002, for a consultive psychiatric evaluation. Plaintiff indicated that she was surprised that she was asked to undergo a psychiatric evaluation because she did not have any specific psychiatric complaints. Plaintiff reported that

she can take care of her personal hygiene, but that her husband and children take care of the house chores, cooking and shopping. After a mental status examination, Dr. Ghaemian diagnosed adjustment disorder with depressed mood, but explained that her condition was stable and a normal reaction to her current medical issues. Her prognosis was favorable. Plaintiff could perform simple repetitive work and a detailed, complex job on a regular basis in a work-like environment. AR 221-225.

On May 31, 2002, State Agency physician Elpidio Fonte, M.D., completed a Physical Residual Functional Capacity Assessment. He opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for about six hours in an eight hour workday, and could sit for about six hours in an eight hour workday. She could occasionally climb ladders, ropes and scaffolds and could occasionally stoop. She had no further limitations. AR 226-233. Dr. Fonte recommended a light RFC, and this recommendation was affirmed on June 3, 2002. AR 235.

Also on May 31, 2002, Dr. Fonte completed a Psychiatric Review Technique Form. Dr. Fonte opined that Plaintiff had no severe impairments. AR 319. This finding was affirmed on December 2, 2002. AR 319.

Plaintiff's back pain increased and she was exposed to Valley Fever in May 2002. Dr. Bravo referred her to an orthopedist, an allergist, a gastroenterologist, and to mental health for depression. AR 306-312.

On September 8, 2002, Plaintiff went to the emergency room complaining of back pain. She had paraspinal muscle spasm, with significant spasm on the right side. AR 369. She was assessed with lumbar disc disease of the lumbosacral spine, acute exacerbation. AR 369. She was discharged with pain medications. AR 370.

In September, October and December 2002, Plaintiff underwent lumbar epidural steroid injections and local anesthetic injections. She tolerated the procedures well. AR 412, 414, 417.

A November 12, 2002, MRI of Plaintiff's brain was normal. There was a small polyp in the left maxillary sinus. AR 378.

On November 18, 2002, she returned to Dr. Pineda, complaining of multiple pains in the spinal axis and numbness in her face. Dr. Pineda indicated that the etiology of the pain and numbness was unclear; her workup was essentially clean and the MRI and EEG were normal. Her neurological examination did not reveal any focal deficits. AR 400, 406. A chest x-ray was also normal. AR 423.

On December 2, 2002, State Agency physician Anne M. Khong, M.D., completed a Physical Residual Functional Capacity Assessment. She opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for about six hours in an eight hour workday, and could sit for about six hours in an eight hour workday. She could occasionally climb, balance, stoop, kneel, crouch and crawl. AR 288-295.

On December 17, 2002, Plaintiff underwent another lumbar epidural steroid injection and local anesthetic injections. AR 412. She tolerated the procedure well. AR 412.

A chest x-ray taken on March 7, 2003, was normal. AR 422.

Plaintiff saw Dr. Mack on April 28, 2003, complaining of more pain in her back and leg. AR 545. Dr. Mack ordered a repeat MRI, but her insurance would not allow another MRI. AR 544- 545.

Plaintiff returned to Dr. Mack on May 15, 2003, and asked for Vicodin because Darvocet was not helping. Dr. Mack gave her a prescription and indicated that "there is really nothing more I can do." AR 544.

On May 22, 2003, Plaintiff told Dr. Mack that she was still having pain and asked him to continue to fill out her disability forms. He told her that he could no longer do so because he could not find a reason for her continued pain. He suggested that she apply for SSI and be evaluated by a Social Security physician. AR 543.

In May 2003, Plaintiff was involved in a motor vehicle accident. AR 486. She saw G.B. Ha'Eri, M.D., for an orthopedic examination on May 29, 2003, and complained of neck and back pain, left knee pain and right ankle pain. He diagnosed cervical, thoracic and lumbar myoligamentous strain, aggravation of a preexisting lumbar discopathy, left knee contusion and right ankle sprain. AR 488. She was reexamined in June, and her symptoms were gradually

improving in response to physical therapy. AR 488. She was given a TENS unit and her physical therapy was extended. AR 488.

In July 2003, Plaintiff went to the Kern County neurology clinic, complaining of constant upper and lower back pain, and numbness in her legs and ankles since the automobile accident. She told the intake nurse that she had no problems with activities of daily living and no problems ambulating. AR 469. After examination, Dr. Meyer indicated that Plaintiff had chronic back pain and depression, but that the "anatomy/physiology did not match subjective complaints." AR 469.

Plaintiff saw Dr. Meyer again on July 16, 2003. Her physical examination was not consistent with any anatomical derangement. AR 467. However, he indicated that she was permanently disabled from heavy farm work. AR 465, 467.

On July 24, 2003, Plaintiff returned to Dr. Ha'Eri, complaining of mild residual low back pain. Dr. Ha'Eri described her prognosis as good with respect to her injuries, except for her lower back, for which the prognosis is guarded because of the aggravation of her preexisting injury. He opined that her lower back symptoms may show exacerbation/reoccurrence in the future, thus necessitating further conservative medical care, i.e., doctor's office visits, medications and physical therapy. He did not schedule a follow-up appointment. AR 489.

On February 16, 2004, Dr. Mack examined Plaintiff. He noted that the most recent MRI showed a normal thoracic spine, mild changes in cervical spine, and a ventral and left sided disc protrusion at L4-5 and a degenerative disc at L5-S1 in the lumbar spine. Examination of the cervical spine revealed minimal decrease of range of motion and some tenderness, examination of the thoracic spine was tender throughout, and examination of the lumbar spine showed inordinate tenderness even with light touch. Flexion, extension, and side-bending were less than 30 percent of normal, with grunts and groans, she could not heel or toe walk, and straight leg raising was positive bilaterally at 20 degrees. However, when she was seated and with distraction, the Dr. Mack was able to fully extend her knees bilaterally which he described as tantamount to a straight leg raise to 70 degrees without complaint. Dr. Mack opined that the new MRI was substantially unchanged, and that Plaintiff has a very low pain threshold and is

significantly magnifying her symptoms.  He did not feel she needed any further treatment.  AR 551.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of lumbar degenerative disc disease and obesity.  AR 17.  In reviewing the medical evidence and Plaintiff's testimony, the ALJ decided that Plaintiff's allegations were not entirely credible.  Plaintiff retained the RFC to perform light restricted work: she could lift and carry 20 pounds occasionally and 10 pounds frequently, stand, walk and sit for six hours in an eight hour day, and occasionally climb, balance, stoop, kneel, crouch and crawl.  AR 17. Citing the testimony of the VE, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy.  Specifically, Plaintiff could work as an ag sorter, an assembler and a flagger-crossing guard.  AR 22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

///

**REVIEW**

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (lumbar degenerative disc disease and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work; but (5) retains the RFC to perform a significant range of light work. AR 22-23.

Plaintiff argues that the ALJ failed to properly consider the complete opinion of examining physician Dr. Gurdin.

**DISCUSSION**

Plaintiff believes that the ALJ should have adopted the entire opinion of Dr. Gurdin, including what she describes as a limitation in repetitive or strenuous arm motion. Plaintiff contends that this resulted in an incomplete hypothetical and an improper RFC finding.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

11

1    The opinion of an examining physician is entitled to greater weight than the opinion of a
2 nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v.*
3 *Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of a treating physician,
4 the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted
5 opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating
6 doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be
7 rejected for specific and legitimate reasons that are supported by substantial evidence in the
8 record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).
9    Here, the ALJ reviewed Dr. Gurdin's opinion, including his finding that repetitive or
10 strenuous arm motion would probably aggravate her upper back complaints. AR 19, 164. The
11 ALJ gave "substantial weight" to the consultive examiners, including Dr. Gurdin, who opined
12 that Plaintiff was capable of performing light work with no mental limitations. AR 20.
13    Plaintiff appears to misunderstand the impact of Dr. Gurdin's statement. He explained
14 that "[r]epetitive or strenuous arm motion would probably aggravate her upper back complaints,"
15 but that **"hand and arm function appeared to be intact for lighter activity."** AR 164. In
16 other words, Dr. Gurdin believed that lighter activity would avoid repetitive and strenuous arm
17 movements and therefore prevent aggravation of her upper back. Indeed, during his examination,
18 Plaintiff could make a fist with both hands, manual dexterity was normal, and grip strength and
19 arm strength were normal and rated at 5/5. AR 163. Moreover, Dr. Gurdin, as well as the State
20 Agency physicians, believed that Plaintiff could lift up to 20 pounds occasionally and 10 pounds
21 frequently, which is within the definition of light work. AR 164, 226-35, 288-95, 20 C.F.R. §§
22 404.1567(b), 416.967(b). Thus, there is no inconsistency between Dr. Gurdin's opinion and the
23 ALJ's finding that Plaintiff could perform a significant range of light work.
24    Nor is there any other evidence in the record or Plaintiff's testimony that she had hand
25 and arm limitations beyond that required for light work activity. Neither State Agency physician
26 found any manipulative limitations or any limitation in pushing/pulling with Plaintiff's upper
27 extremities. AR 227, 229, 289, 291. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996)
28 (findings of a nontreating, nonexamining physician can amount to substantial evidence, so long

as other evidence in the record supports those findings).  In any event, even if the medical record could be described as being susceptible to more than one rational interpretation, the Court must uphold the ALJ's decision.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Maria Ledesma.


IT IS SO ORDERED.

Dated:   **August 9, 2006**              **/s/ Dennis L. Beck**
3b142a                                          UNITED STATES MAGISTRATE JUDGE